GARRISON, Judge.
In this lawsuit arising out of a rear-end collision, defendants Robert Rice, Texaco, Inc., and American Motorists Insurance Company stipulated to liability. The sole issue at trial was the amount of damages to *744 be awarded. After a non-jury trial, the district court awarded $30,873.00, comprised of $15,000.00 for personal injuries, $13,-753.00 for lost wages, and $2,120.00 for medical expenses. The judgment also awarded interest from date of judgment until paid, and fees of $100 to each of the expert witnesses. After denial of their motion for remittitur and/or new trial, defendants appealed and plaintiff answered their appeal.
Defendants raise the following issues on appeal: (1) whether the award for lost wages was supported by the law and the evidence; (2) whether plaintiff acted reasonably to fulfill his duty to minimize damages; and (3) whether the amount awarded for personal injuries was an abuse of discretion. Plaintiff, on the other hand, assigns as error the trial judge’s award of lost wages only up to the date of trial rather than for the rest of plaintiff’s life.
FACTS
On July 8, 1976, James Dillon’s automobile was hit from behind by a vehicle owned by Texaco, Inc. and driven by Robert Rice, a Texaco employee. Dillon testified that his back began hurting immediately after the accident with a throbbing pain in the lower section. He was on vacation in the week during which the accident occurred, but went back to work at Avondale shipyards, on the following Monday. He was able to perform his job duties, but with pain. The pain became worse over the next week, so he consulted a chiropractor, Dr. John E. Bryant. Dr. Bryant diagnosed his problem as muscle strain at the fourth, fifth and sixth lumbar vertebrae, treated him for approximately three months, and discharged him on September 15, 1976 as asymptomatic. Plaintiff testified that the only time his pain would diminish was on the day he saw the doctor. The pain would ease for two or three hours after his chiropractic treatment and then would return. He continued to work despite his pain. He informed his foreman of his back problem, and other people were assigned to assist him with heavy lifting.
Dillon sought no further treatment until March 7,1977, when he consulted Dr. Ralph Gessner, an orthopedic surgeon, who treated him thereafter on a regular basis. Dr. Gessner diagnosed his complaint as chronic lumbosacral strain. He prescribed diathermy, analgesics and muscle relaxants and fitted him with a surgical corset. On March 17, 1977, when the First Aid department at Avondale discovered that plaintiff was wearing a surgical corset, Dillon was forced to go on disability leave. This was due solely to Avondale’s policy not to allow employees to work while wearing surgical corsets. Although Dr. Gessner recommended to Avondale that plaintiff be temporarily placed on light duty, plaintiff was told there was no “light duty” available.
Plaintiff continued to complain of lower back pain, including complaints of pain radiating into his hips bilaterally. As a result, Dr. Gessner hospitalized plaintiff in May 1977. He was put in traction during his stay, and he underwent a myelogram to investigate for possible disc problems. The myelogram was negative, and plaintiff was released after one week.
On periodic visits to Dr. Gessner thereafter, plaintiff still complained of back pain; however, Dr. Gessner continued to treat him conservatively because he could find few objective symptoms. In November 1977, Dr. Gessner and his associates carefully reviewed plaintiff’s earlier myelogram and found a “suggestion that there is something there.” Because plaintiff was complaining of left leg pain and the doctors noted some minimal reflex changes, Dr. Gessner recommended exploratory surgery of plaintiff’s lumbosacral spine to check for a possible herniated disc. Plaintiff, however, did not agree to the surgery because he was afraid to undergo an operation unless the doctor said it was necessary.
On November 15, 1977 plaintiff was examined by Dr. Harold Stokes, an orthopedic surgeon. Dr. Stokes’ physical examination and X-rays of plaintiff revealed no objective findings of a herniated disc. Dr. Stokes concluded that there were no diagnostic criteria from which a diagnosis of *745 herniated disc could be made; the plaintiff’s subjective complaints were the only indication.
Both Dr. Gessner and Dr. Stokes noted that although plaintiff appeared honest and straightforward in his complaints, they were puzzled by the fact that he had continued to work for some seven or eight months after the accident, apparently without even missing any days. They both found this to be inconsistent with the type of pain that can be expected with a herniated disc. Both doctors noted that there were no objective findings to prevent plaintiff from working at his trade as a welder.
ISSUES
I. Loss of Earnings
Defendants challenge the award of past loss of wages from three approaches. They contend first that because plaintiff’s disability leave was dependent upon his employer’s internal policies rather than upon any actual inability to perform his job, his loss of wages should not be attributed to any fault of defendants. Second, they contend the trial judge erred in awarding lost wages to the time of trial because plaintiff testified he was not wearing the surgical corset at the time of trial, but he failed to show when he had stopped wearing the corset (and, theoretically, he should have been able to return to work when he stopped wearing it). Third, defendants claim that even if plaintiff is entitled to any loss of wages, he had a duty to minimize his damages by seeking other work which he was physically able to do, even if it did not pay as well as his Avondale job.
The law is clear that a defendant is liable for any damages proximately caused by his fault. C.C.Art. 2315. If a defendant injures a plaintiff such that the plaintiff must wear a medical appliance and the plaintiff’s employer refuses to allow plaintiff to work while wearing the appliance, and plaintiff loses wages thereby, then plaintiff’s lost wages result from his wearing the appliance and had it not been for defendant’s fault plaintiff would not have had to wear the appliance. The chain of causation is clear. Thus, defendant here is liable for any wages plaintiff proved he lost as a result of wearing the corset.
The trial judge specifically found as a fact that plaintiff’s doctors felt that he was able to work at his trade of welding. He also found that plaintiff did not quit work because he was physically unable to work, but because as long as plaintiff wore the surgical corset his employer would not allow him to return to work. The evidence shows that Dillon was wearing the corset on March 17, 1977, the last date he worked at Avondale, and that he was not wearing it on March 81,1978, when the case was tried. The trial judge found that lost wages were awardable from March 17, 1977 until the date of trial. However, as defendants-appellants contend in their brief, “all that is known about Mr. Dillon’s wearing the corset is that he was wearing it in March of 1977, and that he was not wearing it on March 31,1978, when this matter was tried. No evidence was offered by Mr. Dillon as to the date on which he last wore the corset as a result of which no logical cut-off can be established for an award of lost wages.” Defendants contend that by awarding lost wages to date of trial, the district judge imposed on defendants the burden of proving the length of time for which plaintiff was entitled to lost wages, “a wholly improper imposition of burden of proof.”
A plaintiff bears the burden of establishing each and every element of damages claimed. Cheramie v. Jones, 327 So.2d 601 (La.App. 4th Cir. 1976). Certainly it is true that when a party has suffered damages but cannot establish them with legal certainty, the courts have discretion to fix the amounts thereof. However, the latter rule has no application when the damages sought are easily proven, but such proof is not forthcoming. Cotton v. Needham, 253 So.2d 674 (La.App. 1st Cir. 1971).
In the case before us, the time period during which past lost wages were awarda-ble could easily have been shown by plaintiff, who failed to do so. His statement at trial that he was not wearing the corset left *746 open the question of when he stopped wearing it. Dillon could have returned to work at Avondale when he no longer needed the corset, since the medical testimony was that he was able, physically, to continue working as a welder. On the other hand, if — as is apparently the case — he simply discontinued wearing the corset without his physician’s advice, yet really should have been wearing it, he failed in his duty to minimize his damages because he refused to follow medical advice aimed at improving his back condition. See Darnell v. Taylor, 236 So.2d 57 (La.App. 3rd Cir. 1970); Unverzagt v. Young Builders, Inc., 252 La. 1091, 215 So.2d 823 (1968).
We conclude that the trial judge erred in awarding past lost wages up to the date of trial, because by doing so he supplied facts not in the record, and he imposed on defendants the burden of proving a fact which it was plaintiff’s responsibility to prove, and which plaintiff easily could have proven. Cotton v. Needham, supra. Accordingly, we reverse the award of $13,-753.00 for past lost wages, on the ground that plaintiff failed to carry his burden of proof.
Since we conclude that the award of past lost wages must be reversed, we do not address the issue of whether plaintiff had a duty to seek other work while precluded from working at his Avondale job.
The district court refused to award any future loss of earnings to plaintiff. The judge concluded, “The nature and extent of the injury as medically determined, along with the opinion of plaintiff’s doctors that he is able to work at his trade, negates any evidence offered by plaintiff as to permanent disability and future loss of earnings.” This determination is fully supported by the record and we affirm it.
II. Damages for “Personal Injury” (Pain and Suffering)
We affirm the award of $15,000.00 for pain and suffering because we find no abuse of discretion by the trial judge. Considering the facts, as we must, in the light most favorable to plaintiff, Schexnayder v. Carpenter, 346 So.2d 196 (La.1977), we conclude there is sufficient evidence to indicate that from July 8, 1976 to the date of trial, plaintiff suffered steady pain. Although the pain was not sufficient to prevent him wholly from performing his job duties, he required assistance on his job while his employer allowed him to work. He testified that while he was working at Avondale his back would hurt at work and would be much worse when he went to bed at night. Sometimes he could find no comfortable position in which to lie. The pain interfered with his family life, recreational activities, and his mental attitude. He had to spend a week in the hospital, enduring a myelogram and being put in traction. He testified that the myelogram caused him additional pain through his neck up into his head, so that he could move only with “real hard pain,” and that this state lasted about a week. He also testified that since his leave from Avondale, he had done odd jobs of minor electrical repair, but that he suffers pain while doing these and is in more pain at night when he has been working. He stated that he has found nothing to relieve his constant pain. Although he has some medication to take when he is in severe pain, he would be afraid to work while taking this medication.
Both doctors testified that they found plaintiff’s complaints of pain credible, although not necessarily indicative of a herniated disc. Other witnesses, plaintiff’s friends and co-workers, testified to his apparent pain and discomfort and his complaints.
Based on the evidence in the record, we find no abuse of discretion in.the district court’s award of $15,000.00 for pain and suffering, and we affirm that portion of the judgment.
Plaintiff and defendants have stipulated on appeal that (1) interest should be calculated from date of demand until paid, and (2) that the expert witness fees allowed by the District Court to Dr. Ralph Gessner and Dr. John E. Bryant have previously been paid by defendants-appellants and therefore *747 should be stricken. Since these stipulations are fair and in accordance with the law, we amend the judgment to include them.
DECREE
For the foregoing reasons, the judgment of the district court is affirmed as to award of $15,000.00 for personal injuries (pain and suffering) and the award of $2,120.00 for medical expenses. The judgment is reversed as to the award of $13,753.00 for loss of wages. The judgment is amended to award plaintiff interest on the judgment from date of demand until paid, and it is further amended to award an expert witness fee of $100.00 to Dr. Melville Wolfson only, the other experts’ fees already having been paid by defendants.
AFFIRMED IN PART, REVERSED IN PART, AND AMENDED.